Good morning everyone and Judge Bivey and Judge Bea and I would like to welcome you all to the Ninth Circuit. We're excited to see you all here. We have four arguments today. The first is United States v. Christopher Millican. And when the parties are ready, Ms. Hughes, I believe. When you're ready. Good morning, Your Honors. May it please the Court. Christy Hughes on behalf of Mr. Millican. I'd like to reserve three minutes for rebuttal, but I'll keep an eye on the clock. Very well. I know there are a lot of issues raised in this case. I want to start by just very briefly addressing the interrogation in case the Court is inclined to reach that issue on plain error. Obviously, there was no motion to suppress, no evidentiary hearing. But this Court does have the interrogation transcript and the interrogation video, and the Court can look at those and make the legal determination that Mr. Millican sufficiently invoked his right to counsel when he said, I mean, if I have to, I guess I need to talk to somebody about this. Like, I've never had to get a lawyer for anything, but, and then sat there in silence for several seconds. That's a sufficiently clear invocation of his right to counsel. All that's required is that a defendant or a suspect speak clearly enough that a reasonable officer would understand that he's requesting an attorney. And Mr. Millican said, I need to talk. Counsel, that's very difficult to get off of that transcript. That's why a hearing would have been very, very useful. It's very difficult to see that that is actually an invocation. He does seem to be puzzled because he wants to know whether it would have to be a military lawyer or whether it could be a public defender, whether he would be on the hook for any costs. And he then initialed a waiver saying that he understood he had the right to a lawyer and that he was voluntarily talking with him. So all of that, I think, on a cold record makes it very, very difficult to conclude that he has unambiguously invoked a right to counsel and that he did not wish to proceed in the absence of counsel. Well, I understand Your Honor's point, and we are faced with this cold record, unfortunately. But I think on this point, you know, I'll submit on the question of whether he was questioning under Rodriguez, whether that was an ambiguous statement in response to the advisal of the right to counsel. But on this point about whether in the middle of the interrogation that he invoked, I think the record's much clearer. He says there, I need to talk to somebody about this. And it's clear from the next sentence that he means a lawyer. He says, I've never needed a lawyer before for anything. And then he just sits there, I think, waiting for them to give him the lawyer that he's just asked for. And they just don't. They sit there for several seconds, and then they continue with the interrogation. And so, you know, it's not required that someone speak very eloquently. All that's required is that it's clear enough that a reasonable officer would understand he's asking for counsel. And when he says, I need to talk to somebody, and he's referring to a lawyer, that's sufficiently clear. I'd like to turn to the testimonial hearsay issue. There's two points of dispute between the parties on this. Whether this was testimonial, whether these Snapchat and Comcast records were testimonial, and whether they were hearsay. Because the government argues that they weren't admitted for their truth. So on the hearsay, on the truth of the matter asserted point, the Supreme Court just recently affirmed in Smith v. Arizona that we don't take the government's non-hearsay label at face value. The reviewing court undertakes its own independent analysis of whether the statements were admitted for the truth of the matter asserted. Well, why wasn't it admitted properly under the effect of the listener? And that is law enforcement and how they conducted their investigation. I guess, why was that incorrect? And that's what the government has argued, Your Honor. But if you go back to Detective Diaz's direct, you can see that they're going through and using this to establish the disputed element of identity. This is at 4ER 320. They go through and they ask, what subscriber name shows up on this? Christopher Milligan. Was there a service address? Yes, it was 2900 Sky Raider Court. What was the email address? Christopher George Milligan. They go through with the same thing with the Snapchat records. And when you look at the cross, I think it's even, and the redirect, it's even clearer to see that the government was using these to establish identity. Because the defense lawyer gets up on cross and is trying to rebut all of the evidence that had just come in to link Mr. Milligan to that Snapchat account. So he says, you know, those Snapchat records don't necessarily tell us that Mr. Milligan was the user of that, correct? And Detective Diaz says yes, and then the government gets back on redirect and goes back to the Comcast records and goes right back up to link it. What was the account associated with that IP address? This is at 4ER333. It was Christopher Milligan. What was the address? 2900 Sky Raider Court, Apartment B in Lemoore. So I understand that's the government's argument, but I just don't think the way they used it was to show the effect on the listener. Again, and we raised this in the briefs, but again, during the closing argument, the gov... For what purpose did the government then use it, or did they, yeah, did the government then use it? They used it to get a warrant. They did, but... And then linked it to Milligan, who then came in and confessed that he was the guy that owned the account. I'm sort of puzzled as to what they were supposed to do and why that's testimonial and not simply an indication of the path that the government chose in order to get the warrant. His confession then links him to this without any question. I don't know why this is even relevant at this point. Well, again, in terms of harmlessness, we've argued that confession shouldn't have come in, but there is case law saying that for confrontation clause analysis, that if testimonial statements come in and they significantly alter the evidentiary picture, then they're not harmless. They do have an effect on the outcome.  But this is a very... The government didn't follow any unusual path in the way that it secured this information. In other words, this is commonly done. So is there any other case in which a court has addressed this issue? Are we the first court to address this issue? Again, a very, very common procedure? Well, we're not taking issue with the government's procedure in how they got a warrant. We're taking issue with how they admitted those statements. Well, what I'm suggesting is I'm guessing that this scenario has been duplicated hundreds, if not thousands, of times. Is there any other court that has ever taken up this point, addressed it, and concluded that this is testimonial evidence and that it must be verified? Yes. So I would point, Your Honor, to the First Circuit case that we cited, Cameron. Those there were two sets of records that came in. One were these automatic login trackers that Yahoo produced. And then there were these tip sheets that Yahoo produced, which was someone went through the data at Yahoo, determined which user had suspected child pornography in his account, and then sent a report to the National Center for Missing and Exploited Children. And there, the First Circuit distinguished between those two types of records and said the initial... Those login trackers, those are not testimonial. They're created in the regular course of Yahoo's business. They don't make a statement. There's nothing in those. But an employee at Yahoo searched through the data and then made a statement that was submitted to the National Center for Missing and Exploited Children and was admitted at trial that says, this is how you identify this person who's suspected of having child pornography. And that's what happened here. The detective T.S. sent out the search warrant. Comcast and Snapchat searched through their records. An employee at each company produced a formalized statement that was responsive to that search warrant that said, here is the identifying information for this person. We've searched our records. Here's how you tell who this person is. And that was a new statement whose primary purpose was to provide evidence against a defendant at trial, which the Supreme Court said in Melendez-Diaz is testimonial. And so when that came in, it shouldn't have come in through Detective Diaz. It should have come in through the Snapchat employee and the Comcast employee who could explain the records that they searched for, how they searched through them, and all of that, so that they could have been crossed on it. Unless Your Honors have further questions on that, I'd like to address Mr. Milliken's  This was an almost 50-year sentence, almost at the statutory maximum. And it was objectively substantially unreasonable. It's not just that — Was it a guideline sentence? In other words, was it within the guidelines? It was within the guidelines. How is that not allowed for the district court to do just that? Well, I mean, it's allowed, but it's still substantially unreasonable. As this Court knows, we don't presume that a within-guideline sentence or even a below-guideline sentence is substantively unreasonable. And here, it didn't account for the unwarranted sentencing disparities and the unwarranted sentencing similarities that it created with this. We cited in the briefs several cases where defendants with much more egregious conduct than Mr. Milliken, cases involving infants where the defendants themselves are sexually abusing the children to create this child pornography, many more victims. Those cases are getting 30-year sentences, 50-year sentences. Mr. Milliken, these were not prepubescent minors. He was not involved in any physical activity. Did the judge not engage in that analysis? No. I don't believe so. He just said, I think this conduct is egregious, and I'm giving you this 47-year sentence, but didn't really engage on the sentencing disparity argument that counsel had raised. But I'm talking more not the procedural unreasonableness, but just the substantive unreasonableness. I think there's also several factors in the record that the judge didn't account for that would have warranted a lower sentence. He didn't consider the fact that Mr. Milliken was just 24 years old when he committed this offense, didn't consider the fact that this was Mr. Milliken's first offense. No one else. Why do you say that? He obviously read the pre-sentence investigation report. All of the things that you've mentioned would be in the pre-sentence investigation report. Why do you say that he didn't consider it? Did he say, was there something in the record that says, I am not considering his age? How do you make that argument? Well, for two reasons, Your Honor. I think one is there's no evidence in the record that he did consider it, in the sense that he never mentioned it on the record. They were definitely fighting about it. We don't expect our judges to do that, do we? Do we expect them to list out every single little thing that's in the pre-sentence investigation report? No, Your Honor, we don't. But I think when this is an issue that defense counsel has raised, that a almost 50-year sentence is going to be much greater than necessary, then the judge could go through, should go through and discuss why the mitigating factors that defense counsel has raised. The judge did comment, somewhat conclusorily, that this was one of the most egregious cases he had ever seen. And although your client didn't physically touch anybody, this was designer porn. He's telling these girls what he wants them to do, and they're responding to him. It's pretty egregious conduct. I don't dispute it was reprehensible and egregious, I just think in comparison to the other cases that are getting this long of a sentence, especially when you consider the fact that this was his first offense, he had been out on pretrial release for two years, pretrial services had no issues with him, he didn't re-offend, he was working, he was going to mental health counseling, again, his young age, there were collateral consequences that the court didn't consider, he was separated from the Navy, he and his family lost not just his job, but his housing, their insurance, there were a lot of factors here that would have warranted a lower sentence than almost near the statutory maximum. I mean, he will be almost 70 when he is released from custody. I'll reserve the remainder of my time unless your honors have questions. Very well. Thank you. Good morning, and may it please the court, John Alex Romano on behalf of the United States. Mr. Milliken's claims are mostly waived or forfeited, but they would fail under any standard of review. We ask that the court affirm the convictions and sentence and remand for the very narrow purpose of correcting an inconsistency in the judgment concerning the payment plan applicable to the total assessment. I'll begin briefly with the Miranda claim. This claim is waived because Mr. Milliken did not raise it before trial or at any point below. Rule 12 identifies suppression claims as claims that must be raised before trial. Rule 12c says that absent a showing of good cause, the failure to raise such a claim renders it untimely. And this Court held in Guerrero, a published decision, that absent that showing of good cause, a newly raised suppression claim on appeal is not reviewable even under the plain error standard. They've said there is good cause, right? What have they said? They have not made any argument as to good cause in either their opening brief or their reply brief or here this morning during argument. So our front-line argument is that this claim is waived. If this Court were to look past Guerrero and conduct some review, it would be for plain error. And I'll just focus on the one of the three issues that my friend on the other side addressed here this morning, and that is the request that's made for counsel. This is the alleged request, I should say, for counsel. And this exchange occurs after Mr. Milliken has executed the written waiver. And just to recap, he says, so, I mean, if I have to, I guess I need to talk to somebody about this. Like, I've never had to get a lawyer for anything but. And then he pauses. He's not interrupted or anything. That is, at best, an ambiguous and equivocal statement. It does not satisfy the standard for an unambiguous request in Davis v. United States. And since we're here on plain error review, it's really the – you'd make a showing of unambiguous to the second power because it has to be clear and obvious that this is an unambiguous request. And it just doesn't get there. If the Court compares this ambiguous statement to others that the Supreme Court in Davis and this Court has held do not rise to the level of an ambiguous case, the Court will see the similarity. So in Davis, the comment was, maybe I should talk to a lawyer. In Michaels v. David, out of this case, I don't know if I should without an attorney. In Doe, out of this circuit, the juvenile's mother says, maybe he ought to see an attorney. All of those statements were held not to satisfy the standard in Davis. And we submit that the statement in question here does not satisfy it either, particularly on plain error review. Can you address the Snapchat referral? Yes, Your Honor. Thank you. And moving to this second claim, and this claim is on plain error review. I believe that's conceded. And there was no confrontation clause error, let alone a plain error. And there are two categories of evidence, and I think it's important to distinguish them because there's been, with respect to my friend on the other side, some, I think, conflating of the categories of evidence. Blowdown counsels. I apologize, Your Honor. The first category would be the law enforcement referral evidence, and this is what Detective Diaz testified to. And the second category, which I'll come back to, would be all of the evidence obtained from Comcast and Snapchat through search warrant. But as for law enforcement referral evidence, this was not hearsay because it was not admitted for the truth of the matter. It was admitted to prove, explain the background for the investigation. Why was that relevant? But, of course, that relevance wasn't raised as an issue. Who cares whether Diaz was acting well or not? Was there an objection to it? I understand there was no objection to the introduction of the evidence. There was on hearsay grounds, not on confrontation grounds. And it was very limited. Detective Diaz, it's not uncommon for a law enforcement officer to explain what led him or her to go seek a search warrant, which is what Detective Diaz was doing. The search warrant wasn't contested, was it? I'm sorry? The search warrant wasn't contested. No, but it was explaining to the jury why they took the step. It's not – I would submit that it's not at all uncommon to have a law enforcement officer explain this is why I went to go seek a search warrant, and that's all it was. It may be common, but it's also irrelevant. But, Your Honor, I would disagree. I think this case is actually controlled by Wachumna, a case decided by this circuit where this Court held – rejected a confrontation clause challenge to testimony that came in by a law enforcement officer that said, we received anonymous complaints that this defendant was illegally selling ego parts. And this Court held that there's no confrontation clause issue with that because it was just admitted to explain why the agents then began to investigate defendant – the defendant in question. It was just admitted to explain the investigative steps that was subsequently taken. So this case is very – is like Wachumna and very dissimilar to the Cameron case that the defense, Mr. Milliken, relies upon so heavily. The law enforcement referral evidence in Cameron were these what were called child pornography reports that were prepared by Yahoo, which undertook an analysis of suspected child pornography. It even went to the legal department. What ISP was used to upload at the uploading time. This report then gets transferred over to the National Center for Missing and Exploited Children, which I think created a similar report. And then all of that goes over to a law enforcement task force. So that was the law enforcement referral evidence in Cameron. In this case, we didn't admit any reports from Snapchat to explain the referral. It was just Detective Diaz testifying about the receipt of information that led him then to go on and seek the search warrant. You explain the primary purpose. I guess that's the – that's what this hinges on. Yes. And it is the Court inquiring as to the referral evidence, because there is a challenge to the actual search warrant records. To the referral. To the referral. The primary purpose was simply to explain why Detective Diaz then goes on to seek the – the search warrants from – from Comcast and Snapchat. It's not even being admitted as substantive evidence of guilt against the defendant. And the Court can see the reason that the government proffered for this evidence at ER 317 to 318. And during closing argument – and I'll just pause and say the district court agreed with that we were not submitting it as substantive evidence, but simply to explain the investigative background. And the Court – the government sort of hewed to that line when discussing the evidence during closing argument at ER 482 to 485. I mean, the fact of the matter is, we go on, the government went on and obtained the search warrant records from Snapchat and Comcast. And that is what we used at trial, those records, to establish the connection between the IP addressing question, the – the Snapchat user account. And that evidence was not testimonial. I'm sorry, Judge Bayhi. You didn't have a custodian of records of either Snapchat or Comcast testify as to the authenticity of the records. Was that a problem? It was not, Your Honor. And I would just say – and this goes more to our fourth plenary prong issue, but we did notice our intent to proceed based on the certifications before trial. And the defense actually filed something registering their lack of objection to our proceeding in that manner. And based on the – on the wording of the pretrial order, that lack of objection in effect meant that the evidence would be admitted. So for now – and I realize I'm on fourth plenary prong, but for now, to now turn around and say, given the – after the lack of objection, that that – to now turn around on appeal and say that that resulted in some miscarriage of justice we believe falls far short of the burden on the fourth prong. Unless the Court has more questions on the referral evidence, I would like to briefly address the actual search warrant records because I understand the confrontation cause challenge also to challenge that evidence. And that evidence analysis is different. It's not testimonial. These are preexisting records of the regularly conducted business activities of Comcast and Snapchat. The Supreme Court indicated in Melendez-Diaz that as a general matter, business records will be admissible without confrontation. And this Court has rejected repeatedly confrontation clause challenges to business records. It did so in Hagege, which was – I think it was foreign bank records in that case. In the Puri case, it was a firearm transaction report. In Castro, it were lender verification documents. So at least, you know, these records were preexisting. They were business records. They were not testimonial. And some of the additional cases that we cite in our briefs go to this and rebut this argument that the defense is also making that the act of looking for responsive documents to the search warrant somehow renders business records that are not testimonial, converts them into testimonial evidence. And our cases that we cite in our brief rebut that. If the Court looks, for example, at the Keck case out of the Tenth Circuit, which we've cited, these are discussed on pages 39 to 40 of the government's brief. Those – the records there were MoneyGram spreadsheets that were produced to the government, and the government introduced them at trial. And the argument was that the act of the custodian of records at MoneyGram, I suppose, of going in and finding responsive spreadsheets and consolidating them into one spreadsheet, in effect, resulted in a new statement. That was the argument that the defense made. And that statement was testimonial. And the Tenth Circuit rejected it because the pre – these were – all came from preexisting records. There was no creation of new information there. If the Court looks at the Flores case, which is an unpublished Sixth Circuit decision, there it was GPS data that was compiled in response to a law enforcement subpoena. The Sixth Circuit rejected a Confrontation Clause challenge to the admission of those business records. The evidence here is entirely distinguishable from the evidence deemed testimonial in Melendez-Diaz and in Bull Cumming. In those cases, you had certifications prepared by personnel who specifically performed tests to provide evidence at trial. In Melendez-Diaz, it was an analysis of a substance, which turned out to be cocaine, and that analysis needed to be done to prove an element of the offense. In Bull Cumming, it was analysis of the alcohol and drug content, I believe it was a blood test in Bull Cumming. Again, then you have a certification that's done. So that goes to prove an element of the offense. The Orozco-Acosta case that the defense relies on in their reply brief, that involves the certificate of the nonexistence of record, that was the one that was used in the   Can you spend some time on the sentencing? Sure. The counsel addressed that, and I'd like to give you an opportunity to address her objections. Yes, Your Honor. And I'll focus on substantive reasonableness, as my friend on the other side did. The district court imposed a sentence that was long, but it was actually below the guidelines here. And the court was clearly focused on the seriousness of Mr. Milliken's offense conduct and the need to protect minors in the community from Mr. Milliken. The gist of his explanation is that ER-48 said the conduct is, quote, despicable, ongoing, conduct that did, quote, incredible damage. Just one of the worst cases I've seen. I take her argument to be that there is not this sort of comparable analysis to the other, you know, typical cases, that he was extremely young, and that that analysis needed to be gone over and maybe on the record. I don't believe so, Your Honor. As I think one of your questions might have sort of intimated, we don't require district courts to list out every particular reason. It's clear the court here was very engaged. It had the PSR before it. It heard all of the arguments that the defense was making. It was focused on the severity of the offense conduct, the need to protect minors, but it also credited Mr. Milliken with certain factors. It acknowledged that he had expressed some remorse, although the court found that it was mostly focused on the effect the case was having on his life and his family as opposed to the victim's, but it did credit him with that. It credited him with having spoken to law enforcement and provided information. It simply weighed the balance differently than Mr. Milliken wanted. And the court's assessment of the severity of the conduct was not only borne out by the trial evidence, but by the impact statement that was made by Minor Victim 1, who not only testified at trial, but she also appeared for sentencing. And she told the court that as a result of Mr. Milliken's conduct, she had committed suicide or tried to commit suicide, excuse me. And, you know, in her own words, this is at ER 43 to 44, the mental torment this has brought me will forever be scarred on my brain and I will never forget the moments I felt so low I've attempted my own life. The court could rely on that. And as for this unwarranted disparity argument, there are a couple of responses that the government has. One, this was a below-guideline sentence. We know from Gall and this court's decision in Green that one purpose or the purpose of the guidelines is to promote national uniformity in sentencing. So the fact that here Mr. Milliken actually received a guideline that was a sentence that was slightly below the guidelines indicated that, you know, the sentence wasn't going to create unwarranted sentencing disparities. And second, I would just note that in terms of the argument that was made below about unwarranted sentencing disparities, it's a very skeletal argument. The court can look, for example, at one of the sentencing submissions where the argument is made by the defense at ER 64. It's very skeletal. And I understand on appeal, Mr. Milliken has now cited cases of purportedly more egregious conduct. That just shows that there can be other conduct, perhaps equally as egregious, that warrants a long sentence. That doesn't mean, and I don't believe he's come forward with any case even on appeal, showing that a similarly situated defendant received a materially lower sentence, a defendant who had a similar guideline range. I see that my time is about to expire. Any additional questions? Any additional questions? All right. Thank you very much.  Just a couple of points on the testimonial hearsay issue, Your Honors. This case is not like the MoneyGram cases and those other out-of-circuit cases. This was not pre-existing data that a clerk just submitted as evidence. This was a clerk at Snapchat, at Comcast, going through their data, searching through to determine which data was responsive to that search warrant, and then preparing a new statement to be used in court. And that's exactly what Melendez-Diaz says is testimonial. They didn't create new documents, did they? Well, they did. They created the Exhibit 15 and Exhibit 16. It wasn't like they just brought in the spreadsheet that exists at Comcast or Snapchat. They went through and said, these are the pieces of information that will identify the person that is on trial. That was the new statement that they created. And so what the court said in Melendez-Diaz is, if the clerk just wants to certify the correctness of a pre-existing record, that's fine, that's not testimonial. But if the clerk wants to search through the data and either say I don't find the record you're looking for, or makes a new statement about that record that's going to be used as evidence against a defendant, that is testimonial. And that's what happened here. There's a difference between the data and the new statement that was produced about that data in response to the search warrant. What data was left out? Presumably, I mean, I don't know, Your Honor, because I don't have all of those records from Yahoo and, I'm sorry, from Snapchat and Comcast. But presumably there was other data about other IP addresses that had been used, other times he had logged in. I don't know. I don't have that information in front of me. I just have their statement. I want to follow up on something that you said. You said that this document was prepared for trial? I'm sorry, if I said that I misspoke. Yeah, I thought I heard that twice. I apologize. This was prepared for law enforcement, then referred to law enforcement. They went and then got the search warrant. Correct, I think it was prepared under circumstances that would lead a reasonable witness to understand that this would be available for use at a later trial. They're providing this- Why would Snapchat think of that? Does Snapchat have a particular interest in seeing people prosecuted? Well, I think for one, if you look back at Exhibit 16, the Snapchat custodian of records, it comes from the legal department. They're responding to a law enforcement search warrant. But she says right on there, she signs it under penalty of perjury. And she says, I can testify to all of this if I'm called as a witness at trial. So, and same thing with Comcast. It's prepared by the legal department. It's signed under penalty of perjury. That one's even notarized. I think they both recognize that this is a formalized statement that is providing evidence to law enforcement. It's likely that that will end up in a trial. This is likely going to be available for use at trial later. And that's- Would the government's case have been substantially weaker if they hadn't introduced this? I think it would have been weaker. I think identity was what Mr. Milliken was challenging. But we know what happened with the search warrant. He then confessed to all of this. They interrogated him for quite some time. And he told them what he was doing. It's not really in question. Well, I understand Your Honor's point. Mr. Milliken challenged that interrogation. This was the defense was that the interrogators had planted some of the information in his head that, you know, his defense was that wasn't me. Other people had access to my Snapchat account. Other people had access to the internet at my house. And so, his defense was challenging the identity element. And that was how the government used this. Judge Bea's point was well taken. There was no Fourth Amendment claim raised here. And so, whether the search warrant was valid or any, that was just not an issue. This was admitted not to show how the investigation unfolded, but to show that Mr. Milliken was the responsible person for those images in the Snapchat account. Any additional questions? Any additional questions? All right. Thank you. I want to thank both counsel for their presentation. The matter of United States versus Christopher Milliken is submitted.
judges: BYBEE, BEA, MENDOZA